[823 NYS2d 151]

In the Matter of JOHN F. TAGUE III, and CYNTHIA V. TAGUE (Admitted as CYNTHIA A. VANDEN HEUVEL), Attorneys, Respondents. GRIEVANCE COMMITTEE FOR THE NINTH JUDICIAL DISTRICT, Petitioner.

Second Department, August 15, 2006

## APPEARANCES OF COUNSEL

*Gary L. Casella*, White Plains (*Gloria J. Anderson* of counsel), for petitioner.

*Kaminsky & Rich*, White Plains (*Walter L. Rich* of counsel), for respondents.

## OPINION OF THE COURT

Per Curiam.

The Grievance Committee served the respondents with separate petitions dated June 29, 2004. The petition against John F. Tague III contains 12 charges of professional misconduct. The petition against Cynthia V. Tague contains 13 charges of professional misconduct. After a joint hearing on April 28, 2005, the Special Referee sustained all of the charges against both respondents. The Grievance Committee now moves to confirm the Special Referee's report and to impose such discipline upon the respondents as the Court deems just and proper. The respondents cross-move to confirm the Special Referee's report with respect to the respondent John F. Tague III, to the extent of confirming Charges One through Eight, and to disaffirm the Special Referee's report with respect to Charges Nine through Twelve; with respect to the respondent Cynthia V. Tague, to

confirm the Special Referee's report with respect to Charges One through Nine, and to disaffirm the Special Referee's report with respect to Charges Ten through Thirteen; and to censure both of the respondents for their professional misconduct.

Both respondents testified on their own behalf. Neither side called any other witnesses. The respondents are spouses and law partners. Charges One through Nine of the petition against John F. Tague III and Charges One through Ten of the petition against Cynthia V. Tague relate to violations concerning the management and handling of clients' funds. The respondents stipulated to the operative facts of those charges and do not oppose the Grievance Committee's motion to confirm the Special Referee's report with respect thereto. The remaining charges emanate from the "Levine/Coin Mint" matter and are contested.

## I.

The charges against the respondent John F. Tague III (hereinafter the respondent), as stipulated to by the respondent, his counsel, and the Grievance Committee on April 21, 2005, are as follows:*

Charge One alleges that the respondent breached his fiduciary duty and/or engaged in conduct adversely reflecting on his fitness to practice law by failing to review his IOLA account records and permitting commingling of personal funds with funds held on behalf of clients, in violation of Code of Professional Responsibility DR 9-102 (a) (22 NYCRR 1200.46 [a]) and/or DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]).

The respondent and his wife/law partner, the respondent Cynthia V. Tague, admitted as Cynthia A. Vanden Heuvel (hereinafter the co-respondent), maintained an account at the Bank of New York, entitled "Tague & Vanden Heuvel, LLP IOLA account." The respondent was a signatory on that account. Between June 30, 2001, and June 28, 2002, attorney's fees of approximately $83,000 were maintained in that account. The respondent did not review the IOLA records.

Charge Two alleges that the respondent breached his fiduciary duty and/or engaged in conduct adversely reflecting on his fitness to practice law by failing to safeguard client funds or to maintain sufficient client funds, in violation of Code of Professional Responsibility DR 9-102 (a) (22 NYCRR 1200.46 [a]) and/or DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]).

---

* While the charges against each of the respondents emanate from the same underlying incidents, they do not involve identical Disciplinary Rule violations. Moreover, each respondent entered into a separate stipulation.

The respondent and the co-respondent maintained an account at the Bank of New York entitled "Tague & Vanden Heuvel, LLP Attorneys-at-Law," on which the respondent was a signatory.

Between July and August 2001, approximately $95,000 was deposited into the firm's operating account with respect to client Cesarano. On January 22, 2002, the balance in the operating account was only $8,104.96, when the firm should have been holding $72,650 on behalf of client Cesarano and an attorney's fee in that matter of approximately $29,000. The operating account was maintained by the co-respondent. The respondent did not review the account records.

Charge Three alleges that the respondent breached his fiduciary duty and/or engaged in conduct adversely reflecting on his fitness to practice law by failing to safeguard client funds and/or failing to maintain adequate funds in the IOLA account, in violation of Code of Professional Responsibility DR 9-102 (a) (22 NYCRR 1200.46 [a]) and/or DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]).

The following disbursements were made from the firm's IOLA account on behalf of the following clients on the designated dates and in the designated amounts:

| 1) Gallo | 6/28/02 | $ 8,205 |
|---|---|---|
| 2) Goldman | 2/8/02 | 1,500 |
| 3) Cesarano | 4/6/02 | 43,368 |
| 4) Mathiev | 12/13/01 | 160 |
| 5) Boyle | 2/5/02 | 93.09 |
| 6) Babyak | 2/27/02 | 525 |
| 7) Schwint | 3/4/02 | 100 |
| 8) Schaeffer | 2/6/02 | 170 |

There were no funds on deposit in the IOLA account relative to these clients when the disbursements were made.

The account was being maintained by the co-respondent. The respondent failed to review the account records.

Charge Four alleges that the respondent breached his fiduciary duty and/or engaged in conduct adversely reflecting on his fitness to practice law by improperly drawing checks from the IOLA account payable to cash, in violation of Code of Professional Responsibility DR 9-102 (a) and (e) (22 NYCRR 1200.46 [a], [e]) and/or DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]).

Thirteen checks payable to "cash" were drawn from the firm's IOLA account between November 2, 2001, and April 17, 2002, in amounts ranging from $50 to $2,000.

The account was being maintained by the co-respondent. The respondent failed to review the account records.

Charge Five alleges that the respondent breached his fiduciary duty and/or engaged in conduct adversely reflecting on his fitness to practice law by failing to safeguard client funds in the IOLA account, in violation of Code of Professional Responsibility DR 9-102 (a) (22 NYCRR 1200.46 [a]) and/or DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]).

One or more of the following disbursements from the firm's IOLA account were drawn before the time the corresponding client deposit was available:

| 1) DiFebbo | 6/6/02 | $ 2,500 |
| 2) Aguilar/Alvarez | 7/3/01 | 150 |
| 3) Alven | 11/15/01 | 14,500 |

The account was being maintained by the co-respondent. The respondent did not review the account records.

Charge Six alleges that the respondent breached his fiduciary duty and/or engaged in conduct adversely reflecting on his fitness to practice law by making improper disbursements from the IOLA account directly to third-party creditors, in violation of Code of Professional Responsibility DR 9-102 (a) (22 NYCRR 1200.46 [a]) and/or DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]).

Thirteen personal non-client-related disbursements were made from the firm's IOLA account between July 20, 2001, and May 3, 2002, in amounts ranging from $40 to $6,900.

The account was being maintained by the co-respondent. The respondent did not review the account records.

Charge Seven alleges that the respondent failed to properly identify a bank account which held funds belonging to another, incident to the practice of law, in violation of Code of Professional Responsibility DR 9-102 (b) (1) and (2) (22 NYCRR 1200.46 [b] [1], [2]).

Funds belonging to another incident to the practice of law were maintained in an account entitled "Tague & Vanden Heuvel, LLP."

Charge Eight alleges that the respondent engaged in conduct adversely reflecting on his fitness to practice law by com-

mingling personal funds with funds held on behalf of clients, in violation of Code of Professional Responsibility DR 9-102 (a) (22 NYCRR 1200.46 [a]) and/or DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]).

The respondent maintained a bank account entitled "Tague & Vanden Heuvel, LLP" in which he deposited funds belonging to another incident to the practice of law, as well as funds belonging to the respondent and the co-respondent or the firm.

Funds belonging to some 14 clients were deposited into the account.

Charge Nine alleges that the respondent engaged in conduct adversely reflecting on his fitness to practice law by failing to safeguard client funds and/or failing to maintain adequate client funds on deposit, in violation of Code of Professional Responsibility DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]).

Funds relating to clients Ardnt, DiFebbo, and/or Jones were deposited into the account entitled "Tague & Vanden Heuvel, LLP." Disbursements of $500, $2,500 and $400, respectively, were made from that account at a time when there were insufficient client funds on deposit relative to those clients.

The respondent did not review the account records.

Charge Ten alleges that the respondent charged and/or collected an illegal or excessive fee, in violation of Code of Professional Responsibility DR 2-106 (a) (22 NYCRR 1200.11 [a]).

Tague & Vanden Heuvel, LLP, represented Coin Mint, Ltd. and/or Howard Levine in a personal injury/property damage action against W.P. Mall Corp. in the Supreme Court, Westchester County. The firm received a retainer of $1,450 and gold coins valued at approximately $1,075.

The action was settled for $45,000 on or about July 1, 2002. The settlement funds were disbursed as follows: $20,000 to Charles Blaisdell, an attorney, $8,559.21 to Howard Levine, and $16,440.79 retained by the firm.

Charge Eleven alleges that the respondent engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation by filing a false closing statement with the Office of Court Administration, in violation of Code of Professional Responsibility DR 1-102 (a) (4) (22 NYCRR 1200.3 [a] [4]).

The respondent filed a closing statement dated December 3, 2002, which set forth under the paragraph titled "net amounts" that the compensation to the firm was $16,440.79.

The petition further alleged that the respondent failed to disclose one or more of the following on the closing statement: receipt of a retainer of $1,450 and gold coins valued at approximately $1,075 and that, with respect to the disbursement to attorney Charles Blaisdell, approximately $5,850 represented contingent compensation for legal work relating to the Coin Mint action.

Charge Twelve alleges that the respondent engaged in conduct prejudicial to the administration of justice by failing to timely file a closing statement with the Office of Court Administration, in violation of Code of Professional Responsibility DR 1-102 (a) (5) (22 NYCRR 1200.3 [a] [5]).

On or about December 3, 1998, the respondent and his law firm were retained to represent Coin Mint, Ltd. and/or Howard Levine in a personal injury/property damage action against W.P. Mall Corp. in the Supreme Court, Westchester County. The retainer and closing statements filed by the respondent were not filed within the time parameters set forth in 22 NYCRR 691.20.

The parties stipulated to receive 23 exhibits into evidence with respect to the disciplinary proceeding of John F. Tague III.

## II.

The charges against the co-respondent, as stipulated to by the co-respondent, her counsel, and the Grievance Committee on April 18, 2005, are as follows:

Charge One alleges that the co-respondent commingled personal funds with funds held on behalf of her clients, in violation of Code of Professional Responsibility DR 9-102 (a) (22 NYCRR 1200.46 [a]).

Between June 30, 2001, and June 28, 2002, the co-respondent maintained attorney's fees totaling approximately $83,000 in the firm's IOLA account. She either deposited earned fees into that account or retained fees in the account after they were earned.

Charge Two alleges that the co-respondent converted funds entrusted to her as a fiduciary incident to her practice of law, in violation of Code of Professional Responsibility DR 9-102 (a) (22 NYCRR 1200.46 [a]).

Between July and August 2001, the co-respondent deposited approximately $95,000 into the firm's operating account re-

lating to client Cesarano. She admitted in sworn testimony that she should have been holding $72,650 on behalf of that client. The firm was entitled to an attorney's fee of approximately $29,000 in the Cesarano matter. The co-respondent further admitted that on January 22, 2002, the balance in the operating account was only $8,104.96.

Charge Three alleges that the co-respondent engaged in conduct adversely reflecting on her fitness to practice law by failing to maintain a duly constituted IOLA account, in breach of her fiduciary duty, when she failed to safeguard client funds and/or failed to maintain adequate client funds in the IOLA account, in violation of Code of Professional Responsibility DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]).

The co-respondent made disbursements from the firm's IOLA account on behalf of the following clients on the designated dates in the designated amounts:

| 1) Gallo | 6/28/02 | $ 8,205 |
|---|---|---|
| 2) Goldman | 2/8/02 | 1,500 |
| 3) Cesarano | 4/6/02 | 43,368 |
| 4) Mathiev | 12/13/01 | 160 |
| 5) Boyle | 2/5/02 | 93.09 |
| 6) Babyak | 2/27/02 | 525 |
| 7) Schwint | 3/4/02 | 100 |
| 8) Schaeffer | 2/6/02 | 170 |

At the time of the disbursements, there were no funds on deposit in the IOLA account relative to those clients.

Charge Four alleges that the co-respondent improperly drew checks from the IOLA account payable to cash, in violation of Code of Professional Responsibility DR 9-102 (e) (22 NYCRR 1200.46 [e]).

Thirteen checks payable to "cash" were drawn from the IOLA account between November 2, 2001, and April 17, 2002, in amounts ranging from $50 to $2,000.

Charge Five alleges that the co-respondent engaged in conduct adversely reflecting on her fitness to practice law by failing to maintain a duly constituted IOLA account in breach of her fiduciary duty, by failing to safeguard client funds in the IOLA account, in violation of Code of Professional Responsibility DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]).

One or more of the following client disbursements which the co-respondent made from the firm's IOLA account were drawn

before the time the corresponding client deposit was available:

| | | |
|---|---|---|
| 1) DiFebbo | 6/6/02 | $ 2,500 |
| 2) Aguilar/Alvarez | 7/3/01 | 150 |
| 3) Alven | 11/15/01 | 14,500 |

Charge Six alleges that the co-respondent engaged in conduct adversely reflecting on her fitness to practice law by making improper disbursements from the IOLA account directly to third-party creditors, in violation of Code of Professional Responsibility DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]).

The co-respondent made 13 personal/non client-related disbursements from her IOLA account between July 20, 2001, and May 3, 2002 in amounts ranging from $40 to $6,900. The co-respondent stated that these disbursements were drawn against fees maintained in the IOLA account.

Charge Seven alleges that the co-respondent failed to maintain required bookkeeping records for the IOLA account, in violation of Code of Professional Responsibility DR 9-102 (d) (1) and (2) (22 NYCRR 1200.46 [d] [1], [2]).

On or about December 12, 2001, the co-respondent issued a check payable to herself from the firm's IOLA account in the amount of $500. She was unable to identify the source of the corresponding deposit or the purpose of such disbursement, and did not maintain records with respect thereto.

Charge Eight alleges that the co-respondent failed to properly identify a bank account which held funds belonging to another, incident to the practice of law, in violation of Code of Professional Responsibility DR 9-102 (b) (1) and (2) (22 NYCRR 1200.46 [b] [1], [2]).

The co-respondent maintained funds belonging to another incident to the practice of law in an account entitled, "Tague & Vanden Heuvel, LLP."

Charge Nine alleges that the co-respondent commingled personal funds with funds held on behalf of her clients, in violation of Code of Professional Responsibility DR 9-102 (a) (22 NYCRR 1200.46 [a]).

The co-respondent maintained a bank account entitled "Tague & Vanden Heuvel, LLP" in which she deposited funds belonging to another incident to the practice of law, as well as funds belonging to the co-respondent and the respondent or the firm.

Funds belonging to some 14 clients were deposited into the account which, the respondent testified, was also utilized as the firm's operating account.

Charge Ten alleges that the co-respondent engaged in conduct adversely reflecting on her fitness to practice law by failing to safeguard client funds and/or failing to maintain adequate client funds on deposit, in violation of Code of Professional Responsibility DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]).

Funds relating to clients Ardnt, DiFebbo, and/or Jones were deposited into the account entitled "Tague & Vanden Heuvel, LLP." Disbursements of $500, $2,500 and $400, respectively, were made from that account at a time when there were insufficient client funds on deposit relative to those clients. The co-respondent maintains that the disbursements for DiFebbo and Jones were made against earned fees on deposit in said account. The Ardnt disbursement was drawn partially against a corresponding deposit for that client and partially against earned fees on deposit.

Charge Eleven alleges that the co-respondent charged an illegal or excessive fee, in violation of Code of Professional Responsibility DR 2-106 (a) (22 NYCRR 1200.11 [a]).

This charge and the stipulations with respect thereto are identical to Charge Ten contained in the petition against the respondent.

Charge Twelve alleges that the co-respondent engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation by filing a false closing statement with the Office of Court Administration, in violation of Code of Professional Responsibility DR 1-102 (a) (4) (22 NYCRR 1200.3 [a] [4]).

This charge and the limited stipulation relating to it are identical to Charge Eleven contained in the petition against the respondent.

Charge Thirteen alleges that the co-respondent engaged in conduct prejudicial to the administration of justice by failing to timely file a closing statement with the Office of Court Administration, in violation of Code of Professional Responsibility DR 1-102 (a) (5) (22 NYCRR 1200.3 [a] [5]).

This charge and the stipulations with respect thereto are identical to Charge Twelve of the petition against the respondent.

The parties stipulated to receive 23 exhibits into evidence with respect to the disciplinary proceeding of Cynthia V. Tague, admitted as Cynthia A. Vanden Heuvel.

Based on the respondents' admissions and stipulations and the evidence adduced, the Special Referee properly sustained all of the charges against both respondents. In addition to the uncontroverted charges, the Grievance Committee notes, with respect to Charge Nine against the respondent and Charge Ten against the co-respondent, that the fact that the questioned disbursements were made from an account which the respondents had improperly labeled and utilized as an operating account does not excuse them from their fiduciary duty to safeguard client funds in their possession. The account which the respondents used as an operating account and from which the disbursements at issue were made was a master account into which client escrow funds had been deposited and to which various client subaccounts were attached. The respondents do not dispute this and the co-respondent admitted the same in the course of explaining how a misunderstanding between herself and the firm's banks led to her commingling funds. Charge Nine against the respondent and Charge Ten against the co-respondent were properly sustained by the Special Referee. Inasmuch as the evidence supports the Special Referee's finding that the action in question was one to recover damages for personal injury or injury to property resulting from negligence, the attorney fee issue is within the ambit of 22 NYCRR 691.20 (e). The attorney's fee was in excess of the schedule of reasonable fees and, by definition, constituted the exaction of unreasonable and unconscionable compensation. Charges Ten, Eleven, and Twelve against the respondent and Charges Eleven, Twelve, and Thirteen against the co-respondent were properly sustained.

In determining an appropriate measure of discipline to impose, both respondents testified that no clients had ever complained that they had not received funds to which they were entitled as a result of the shortcomings in the handling of the firm's accounts. Since the institution of the Grievance Committee's sua sponte investigation into the escrow account and the resulting charges, the respondent reviews the accounts on a regular basis. The co-respondent acknowledged that she had made some rather serious mistakes and errors in judgment pertaining to the maintenance of the IOLA account and testified with respect to modifications in the manner in which the firm handles its accounts.

Each respondent received a letter of caution, dated November 1, 2002, inter alia, for charging an excessive fee in connection with their representation of a client against the Archdiocese of

New York in a matter involving breach of contract or negligent supervision. The Grievance Committee found that a fee of 50% of the settlement ($35,000) was excessive and violated Code of Professional Responsibility DR 2-106 (22 NYCRR 1200.11). The letters of caution were conditioned upon submission of the fee issue to the Attorney-Client Economic Dispute Committee of the Westchester County Bar Association. After a hearing on February 13, 2003, the respondents agreed to repay the client $14,750 of their claimed fee in exchange for a release.

Notwithstanding the corrective measures undertaken and the absence of venality claimed by the respondents, the evidence illustrates multiple breaches of their fiduciary duty to ensure the integrity of client funds entrusted to them and their longstanding disregard of appropriate escrow precautions. In addition, the respondents charged an excessive fee, after having been cautioned against such conduct in an unrelated matter, and filed an inaccurate and untimely document with the Office of Court Administration.

Under the totality of circumstances, the respondents are suspended from the practice of law for a period of two years.

PRUDENTI, P.J., RITTER, MILLER, SCHMIDT and KRAUSMAN, JJ., concur.

Ordered that the petitioner's motion to confirm the report of the Special Referee is granted; and it is further,

Ordered that the respondents' cross motion to confirm the Special Referee's report with respect to John F. Tague III, to the extent of Charges One through Eight and to disaffirm the Special Referee's report with respect to Charges Nine through Twelve and, with respect to Cynthia V. Tague, admitted as Cynthia A. Vanden Heuvel, to confirm the Special Referee's report with respect to Charges One through Nine and to disaffirm the Special Referee's report with respect to Charges Ten through Thirteen is granted to the extent that Charges One through Eight regarding the respondent John F. Tague III are confirmed, and Charges One through Nine regarding the respondent Cynthia V. Tague, admitted as Cynthia A. Vanden Heuvel, are confirmed, and the cross motion is otherwise denied; and it is further,

Ordered that the respondents, John F. Tague III and Cynthia V. Tague, admitted as Cynthia A. Vanden Heuvel, are suspended from the practice of law for a period of two years, commencing September 15, 2006, and continuing until the further order of

this Court, with leave to the respondents to apply for reinstatement no sooner than six months prior to the expiration of the said period of two years, upon furnishing satisfactory proof (a) that during the said period they refrained from practicing or attempting to practice law, (b) that they have fully complied with this order and with the terms and provisions of the written rules governing the conduct of disbarred, suspended, and resigned attorneys (22 NYCRR 691.10), and (c) that they have otherwise properly conducted themselves; and it is further,

Ordered that pursuant to Judiciary Law § 90, during the period of suspension and until the further order of this Court, the respondents, John F. Tague III and Cynthia V. Tague, admitted as Cynthia A. Vanden Heuvel, shall desist and refrain from (1) practicing law in any form, either as principal or agent, clerk or employee of another, (2) appearing as an attorney or counselor-at-law before any court, judge, justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding themselves out in any way as an attorney and counselor-at-law; and it is further,

Ordered that if the respondents, John F. Tague III and Cynthia V. Tague, admitted as Cynthia A. Vanden Heuvel, have been issued secure passes by the Office of Court Administration, they shall be returned forthwith to the issuing agency and the respondents shall certify to the same in their affidavits of compliance pursuant to 22 NYCRR 691.10 (f).